UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JEROME BURGESS
A/K/A, SHAM' LA GOD ALLAH,

      Petitioner,

v.                       **CASE NO.**  3:04-CV-149-J-99HTS

JAMES V. CROSBY, JR., et al.,

      Respondents.

_____/

## RESPONSE TO PETITION

    Respondents, **James V. Crosby, Jr., et al.**, by and through the undersigned counsel, **pursuant** to Rules 3.01 and 4.14, Rules of the United States District Court for the **Middle** District of Florida, and Rules 4, 5 and **11**, Rules Governing **Section** 2254 Cases in the United States District **Courts**, in response to the instant petition for writ of habeas corpus, filed on or about March 25, 2004, and in response to this court's show cause order rendered April 26, 2004, request this honorable court deny all relief for the reasons set forth below.

### PROCEDURAL AND FACTUAL STATEMENT

    Petitioner was charged by information with being a principal to robbery with a weapon in violation of sections 812.13(1)&(2)(b) and 777.011, Florida Statutes (1999).  (App. A, Vol. I, 1)[1] The information specifically alleged the weapon to be a firearm.  (App.

_____

    [1](App.  ) refers to the appendix filed contemporaneously with the instant response.

A, Vol. I, 1)

Petitioner was **tried** by jury.    **Kanti** Patel, owner of the Thrift Lodge Motel at **2500** North Ponce **de** Leon Boulevard in St. Augustine, testified **that** around 9:20 **p.m to** 9:45 p.m. on January 25, 2001, two black men came in inquiring about a room. (App. A-1, 38-42). After these **men were** asked to **fill out** a registration card and show identification, **the** two men **pulled** out guns and robbed him.  (App. A-1, 42-46).  After the **men ran** out, Mr. Patel saw a white vehicle coming out of a nearby **parking** lot.  (App. A-1, 51-56; 71).  Mr. Patel **identified** the guns **each** of the robbers used, and identified Gerald **McMillan** as one of **the** robbers.  (App. A-1, 58-66).

Two other witnesses, Noor U Deen **Mohammed** and Michael James Lee, testified that **they observed** two men **coming** out of the Thrift Lodge and that they **appeared** to have **guns** in their hands.  Mr. Mohammed testified that **these** two men **entered** a white car with a temporary tag with **its lights** off.  **The car** then drove off and turned its lights on.  (**App.** A-1, 74-81; **88;** 95-98).  Mr. Mohammed and Mr. Lee identified **the** men getting **in the** car as Charles Floyd and McMillan.  (App. **A-1, 83;** 88).

As a result of **Mr. Patel's** 911 call, **St.** Augustine Police were on the lookout and **found the** suspected **white** vehicle.  (App. A-1, 129-130; 141-145).  **After** the vehicle **was** stopped by police, McMillan and Floyd **jumped** out of the **car and** fled.  They were

2

apprehended and two guns were recovered. (App. A-1, 146; 149; 165-166; 172). Following the traffic stop, Burgess was identified as the driver of this white vehicle. (App. A-1, 147; 158; 170; 185).

Charles Floyd then testified that he, Burgess, and McMillan were going to drive to Jacksonville on the night in question with Burgess driving the white vehicle. On the way, Burgess told them he had a "lick for [them] to hit" which meant to Floyd that Burgess had a hotel for them to rob. (App. A-1, 189-193). Burgess gave McMillan and Floyd each a gun and then drove them to the Thrift Lodge in St. Augustine. (App. A-1, 193-194). When they arrived there, Burgess told them to go through the side door, put the man on the floor, and take the phone cord out. He also told them he would pick them up behind the building. (App. A-1, 200).

Floyd testified that he and McMillan committed the robbery at the hotel and then ran to Burgess who was sitting in the car with the lights out. (App. A-1, 201-205). Floyd testified that Burgess told them to lay down and when he stopped, he told them to jump out and run. (App. A-1, 205-209). Floyd identified the guns which were used and the vehicle Burgess was driving. (App. A-1, 205-209). His written statement in which he admitted the crimes was also read to the jury. (App. A-1, 235).

The jury found Petitioner guilty as charged. (App. A-1, 493) He was sentenced on August 16, 2001, to life imprisonment as a

Prison Releasee Reoffender.[2]   (App. A, 187-191; App. I, 416-422)

After he was convicted, Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal and was represented by Clyde E. Wolfe.   (App. A, 198; App. B) Two issues were raised on direct appeal: 1) that the trial court erred in sentencing Petitioner to life imprisonment for robbery with a firearm as a Prison Releasee Reoffender where he was only convicted of robbery with a weapon in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and 2) trial court erred in admitting other crime evidence during rebuttal.   (App. B)   The Fifth District Court of Appeal *per curiam* affirmed Petitioner's conviction and sentence August 27, 2002, and mandate was issued September 13, 2002.   (App. D, E) *Burgess v. State*, 826 So.2d 315 (Fla. 5th DCA 2002).

Petitioner next filed a *pro se* Florida Rule of Criminal Procedure 3.800 Motion To Correct Illegal Sentence on May 8, 2003, raising only one ground for relief: 1) that he was improperly sentenced to life imprisonment as a Prison Releasee Reoffender. (App. F) The trial court denied Petitioner's 3.800 motion on May 20, 2003, and Petitioner appealed to the Florida Fifth District Court of Appeal.   (App. G, H) After requiring a response from the State, and after requiring the clerk's office of the Seventh Judicial Circuit in and for St. Johns County to supplement the record with a certified copy of the charging document, the district

_____

[2] §775.082(9), F.S. (1999).

4

court *per curiam* affirmed the trial court's denial on January 6, 2004. (App. M, N) *Burgess v. State*, 866 So.2d 1228 (Fla. 5th DCA 2004). Mandate was issued on March 8, 2004. (App. P)

While Petitioner's 3.800 was still pending on appeal, he filed a Florida Rule of Criminal Procedure 3.850 Motion For Postconviction Relief on August 25, 2003. (App. Q, R) Eight issues were raised within the motion: 1) ineffective assistance of counsel for failure to file motion to dismiss a duplicitous information which charged both a weapon and a firearm, 2) ineffective assistance of counsel for failure to file a motion for judgement of acquittal, 3) ineffective assistance of counsel for failure to object to a jury instruction, 4) ineffective assistance of counsel for failure to have a key defense witness subpoenaed, 5) ineffective assistance of counsel for failure to investigate and secure impeachment evidence, 6) ineffective assistance of counsel for failure to impeach state witness on a material issue, 7) ineffective assistance of counsel for failure to object to the jury's request to listen to the 911 call and, 8) the State improperly withheld favorable evidence. (App. Q)

The trial court entered a written order summarily denying Petitioner's motion for post-conviction relief on September 12, 2003. (App. S) The first six issues were denied on the merits and the remaining claims were denied as facially insufficient. In addition, the trial court found that Petitioner had failed to

demonstrate either **prejudice or deficient** performance.   (App. S) Petitioner appealed to **the Florida Fifth District** Court of Appeal which *per curiam* affirmed on February 3, **2004**, without requiring a response from the State.   (App. T, U) *Burgess v. State*, 869 So.2d 569 (Fla. 5th DCA 2004).   Mandate was **issued** on March 31, 2004. (App. W) Petitioner **filed a** Petition **For Writ** of Certiorari with the Florida Supreme **Court** which **treated the** petition as a Notice To Invoke Discretionary Jurisdiction.   (**App.** CC) The supreme court dismissed the case **due to** lack of **jurisdiction** on March 31, 2004. (App. DD)

While Petitioner's **appeal** from the **den**ial of his 3.850 was still pending, he **filed a** second 3.850 **rais**ing three additional grounds: 1) ineffective **assistance** of **counsel** for failing to argue *Apprendi v. New Jersey, supra*, at sentencing, 2) trial court erred in instructing jury and 3) ineffective **assis**tance of counsel for failure to call the co-defendant as a **witness**.   (App. X) The trial court denied the postconviction motion **on** February 3, 2004, and found it to be **procedurally barred and that** the additional grounds alleged were identical to grounds **previously** raised but with a restatement of those **grounds** to make **them app**ear to be different. (App. Y)

Petitioner **filed a** Notice of **Appeal** and appealed to the Florida Fifth District **Court** of Appeal.   (**App.** Z) Without requiring a response from the **State,** the district **court** *per curiam* affirmed

on March 23, 2004.  **(App. AA)** *Burgess v. State*, 5D04-635 (Fla. 5th DCA March 23, 2004).  **Mandate was issued** on April 12, 2004.

On or about **March 25, 2004, Petitioner** filed the instant Petition For Writ Of Habeas Corpus with **this** court raising eight issues of ineffective **assistance** of **counsel**.  The first seven issues are the same **exact** issues as **those** raised in issues one through seven of Petitioner's August 25, 2003, 3.850 Motion For Postconviction Relief.  **The** eighth **issue of** the instant federal habeas petition is **ineffective** assistance **of** counsel for failing to object to the sentence **imposed** in violation of *Apprendi*.  On April 26, 2004, this Court **ordered** the instant **response**.

### RECORDS

Respondents have **attached** the state **records** in the appendix filed contemporaneously with the instant **response**.

### EVIDENTIARY HEARING

No evidentiary **hearing** took place **on either** of Petitioner's postconviction **motions**.  Petitioner **is** not entitled to an evidentiary hearing on **the** instant federal **habeas** petition claims. *Smith v. Singletary*, 170 F.3d 1051, 1053-54 (11th Cir. 1999).  The pertinent facts of the case are fully **developed** in the instant record.  *Cave v. Singletary*, 971 F.2d **1513,** 1516 (11th Cir. 1992). No additional **evidentiary** proceedings **are required**.  *High v. Head*, 209 F.3d 1257, 1263 (11th Cir. 2000)(**citing** *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)), **cert.** *denied*, 532 **U.S.** 909 (2001).

7

## PRESIDING JUDGE

The United States Magistrate Judge assigned to this case has not been involved in any of Petitioner's state court proceedings.[3]

## EXHAUSTION

Pursuant to 28 U.S.C. section 2254(b), a court may not grant an application for a writ of habeas corpus on behalf of a person in state custody unless the Petitioner has exhausted the remedies available in state court. To satisfy the exhaustion requirement, a state prisoner must have presented the state courts with the same factual and legal claims that are asserted in the federal petition. *See Picard v. Connor*, 404 U.S. 270, 275 (1971); *Heath v. Jones*, 863 F.2d 815, 818 (11th Cir. 1989); *Duncan v. Henry*, 513 U.S. 364 (1995). In the instant case, Petitioner has exhausted all claims. Claims one through seven were all raised in Petitioner's first 3.850 motion and claim eight was raised in his second 3.850 motion.

## ONE-YEAR LIMITATION PERIOD

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter AEDPA). This law amended 28 U.S.C. §2244 by adding the following new subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgement of a State court. The limitation period shall run from the latest of --

---

[3]At the time this response was drafted, the United States District Court Judge had not yet been assigned.

> (A)  the date on which the judgment of conviction
> became final by the conclusion of direct review or
> the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an
> application created by State action in violation of
> the Constitution or laws of the United States is
> removed, if the applicant was prevented from filing
> such State action;
>
> (C)  the date on which the constitutional right
> asserted was initially recognized by the Supreme
> Court, if the right has been newly recognized by
> the Supreme Court and made retroactively
> applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the
> claim or claims presented could have been discovered
> through the exercise of due diligence.
>
> (2)  The time during which a properly filed application
> for State post-conviction or other collateral review with
> respect to the pertinent judgment or claim is pending
> shall not be counted toward any period of limitation
> under this subsection.

28 U.S.C. §2244(d)(1).

Petitioner's conviction became final on November 25, 2002,
which was 90 days after the opinion from his direct appeal was
rendered.  *Clay v. United States*, 123 S.Ct. 1072 (2003).
Petitioner had one year to file his federal petition in this Court,
unless any periods of time may be excluded from the one-year
limitation period pursuant to 28 U.S.C. section 2244(d)(2).  Under
section 2244(d)(2), the one-year period could be tolled during the
pendency of a properly filed state post conviction proceeding.  The
one year period was tolled by the filing of Petitioner's Florida
Rule of Criminal Procedure 3.800 Motion To Correct Illegal Sentence

filed on May 8, 2003.  **At** that time, **164 days** had expired.   Time
did not begin running **again** until his **appeal** was final when mandate
was issued on March **8, 2004.**   (App. P) **However**, Petitioner's time
was still tolled **because while** the appeal **was** pending, he filed his
first 3.850 motion **for postconviction relief** on August 25, 2003.
(App. Q) That became **final when mandate was** issued on March 31,
2004, and the Florida Supreme Court **dismissed** his case on the
date.   However, Petitioner had already **filed** his second 3.850
motion so his time **was still** tolled.  **(App. W, X)** His second 3.850
motion became final **when** mandate was **issued** on April 12, 2004.
(App. BB) At that time, Petitioner had **already** filed the instant
petition on March 25, **2004.**  Only 164 **days of** Petitioner's one year
limit had elapsed **when the** instant petition was filed, therefore,
it appears that the **petition** has been **timely** filed under the AEDPA.

## SUMMARY JUDGMENT/DISMISSAL

Respondents **request that** the **instant** petition for writ of
habeas   corpus   be   **dismissed** with   **prejudice.**   Dismissal   is
appropriate when it **plainly appears from the** face of the petition
that Petitioner is **entitled** to no **relief.**   28 U.S.C. §2254.

The federal **court must dismiss those** claims or portions of
claims that either (1) **have been explicitly** ruled procedurally
barred by the last **state court considering the** claims,[4] or (2) are
not exhausted but **would clearly be barred** if returned to state

---

[4]*Harris v. Reed*, 489 U.S. 255 (1989).

court.[5]   Claim eight **is procedurally barred**.   The trial court specifically found the **claim** to be procedurally barred because it was raised in a **successive** 3.850 **motion.**   (App. Y) Petitioner appealed and the **denial was** *per curiam* **affir**med.   (App. Z, AA) A *per curiam* affirmance **of** a trial court**'s finding** of a procedural bar is a sufficiently **clear and express state**ment of reliance on an independent and adequate **state** ground **to bar** consideration by the federal court.   *Harmon v. Barton*, 894 **F.2d** 1268, 1273 (11th Cir. 1990).   Petitioner **is barred** from **raising cl**aim eight on federal habeas review.

There are two **exceptions** to the **procedu**ral default bar: the first is the "cause **and prejudice**" **exception;**[6] the second, which is a narrow one, is the "**actually innocent**" **exce**ption, alternatively known as the "**fundamental miscarriage of justice**" exception, used in extraordinary circum**stance**s.   *See **Johnson** v. Singletary*, 938 F.2d 1166, 1174-75 (**11**[th] **Cir.** 1991), ***cert.** denied*, 506 U.S. 930 (1992).   In the **present** case, Petiti**oner** has not shown either cause or prejudice **that would excuse the** default.   Likewise, Petitioner has neither **alleged** nor **shown the** applicability of the actually innocent **exception**.   Claim eight **is** procedurally barred.

---

[5]*Coleman v. Thompson*, 111 S.Ct. 2546 **(1991)**; *see also Bassette v. Thompson*, 915 F.2d **932**, 937 (4th Cir. **1990**).

[6]*See Engle v. Isaac*, 456 U.S. **107**, 129 (1982)("when a procedural default **bars state** litigation **of a** court claim, a state prisoner may not **obtain federal habeas relief** absent a showing of cause and actual prejudice.")

Recently, the Supreme Court explained:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law. *See Williams v. Taylor*, 529 U.S. 362, 403-404, **120** S.Ct. 1495, 146 L.Ed.2d 389 (2000). **To** these ends, §2254(d)(1) provides:
>
> > "(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> >
> > "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal **law**, as determined by the Supreme Court of the United States."

*Bell v. Cone*, 535 U.S. 685, 693-94 (2002).

Now, 28 U.S.C. §2254(d) creates a more deferential standard for federal court review of state court adjudications: "[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness." *Van Poyck v. Florida Dep't of Corrections*, 290 F.3d 1318, 1321 (11th Cir. 2002), *cert. denied*, 123 S.Ct. 70 (2002), 123 S.Ct. 869 (2003). The "contrary to" and "unreasonable application" clauses provide separate bases for federal habeas review:

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court **arrives** at a conclusion opposite to that **reached by this** Court **on a** question of law or if **the state court decides** a case differently **than** this Court **has** on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-413, **120** S.Ct. at 1523 (O'Connor, J., concurring). The "contrary to" clause "suggests **that** the state court's **decision** must be substantially different" **from** the controlling legal precedent. *Fugate v. Head*, **261** F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, _U.S. _, 122 S.Ct. 2310, 152 **L.Ed.2d** 1065 (2002)(quoting *Williams*, 529 U.S. at 405, 120 S.Ct. at 1519). A state court's decision that applies the correct legal rule would not fit within the "contrary to" clause even if the federal court might have reached a different result relying on the same law. *See Williams*, 529 U.S. at 404-06, 120 S.Ct. at 1519-20(O'Connor, J., concurring).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 414, 120 S.Ct. at 1523 (O'Connor, J., concurring). In deciding this issue, the federal court should consider whether the state court's application of the law was objectively unreasonable and should not apply the subjective "all reasonable jurists" standard. *Id.* at 409-410, 120 S.Ct. at 1521-22. The Supreme Court recently adhered to its pronouncements in *Williams*, stating that "we stressed in *Williams* that an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). The Court further noted that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

13

> > federal law **erroneously** or **incorrectly.**'" *Id.*
> > (quoting *Williams*, 529 U.S. at 411, 120 S.Ct.
> > at 1522 (O'Connor, J., concurring)).

*Wellington v. Moore*, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit recently addressed the application of the "contrary to" clause in reviewing a state court adjudication:

> > In applying the "contrary to" prong of
> > AEDPA, we have recognized that where no
> > Supreme Court precedent is on point, "we
> > cannot say that the state court's conclusion
> > ... is contrary to clearly established Federal
> > law as determined by the U.S. Supreme Court."
> > *McIntyre v. Williams*, 216 F.3d 1254, 1258 (11th
> > Cir. 2000).

*Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003), *petition for cert. filed*, (U.S. June 18, 2003)(No. 02-11281).

Under 28 U.S.C. §2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. AEDPA "also directs that a presumption of correctness be afforded factual findings of state court, which may be rebutted only by clear and convincing evidence. *See id.* at §2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." *Bui v. Haley*, 321 F.3d 1304, 1312 (11th Cir. 2003)(footnote omitted)(citing *Sumner v. Mata*, 449 U.S 539, 547 (1981).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination

14

will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  *Wright v. Secretary for the Dep't of Corrections*, 278 F.3d 1245, 1255 (11th Cir. 2002), *cert. denied*, 123 S.Ct. 1511 (2003).  Claims one through six were adjudicated on their merits in the state court, therefore, they must be evaluated under the new §2254(d).  (App. S)

### INEFFECTIVE ASSISTANCE OF COUNSEL

The clearly established law applicable to Petitioner's claims that he received ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Petitioner's claims of ineffectiveness raised in the federal habeas petition, he does not claim that the denial of his claims in state court were contrary to or involved an unreasonable application of clearly established federal law.  Petitioner has not and cannot make such a showing.

First, because the state court adjudicated the claims on the merits, there is a qualifying state court decision.  *See, Wright*, 278 F.3d at 1255-56.  Having found that the state court determination was a qualifying decision, the Court must next consider the "contrary to" and "unreasonable application" components of the statute.  "It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are

15

to decide." *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001), *cert. denied*, 123 S.Ct. 476 (2002).

Accordingly, Petitioner is not entitled to relief on these claims of ineffective assistance of counsel because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### CLAIMS ONE, TWO AND THREE

Claims one, two, and three all involve the same basic allegation – that defense counsel allowed a defective information which resulted in duplicate charges against him. His basic problem is that the information charged him with being a principal to robbery with a weapon which is a first degree felony, yet he was sentenced and punished to life for robbery with a firearm. He alleges defense counsel should have moved to dismiss the charges, should have moved for a judgment of acquittal on those bases and should have objected to the jury instruction on those charges. Petitioner's claim is without merit. Counsel did object at sentencing to being imprisoned for life arguing that he should have only been subject to 30 years. (App. A, 231-232) In any regard, the information did specify the weapon to be a firearm. (App. A, 1) As such, no deficient performance occurred.

16

CLAIMS FOUR, FIVE, SIX, SEVEN

The conduct and decisions of trial counsel whether to call certain witnesses or use certain impeachment evidence were the product of a well-reasoned trial strategy and his performance was reasonable under the prevailing professional norms.   Strategic choices do not constitute deficient conduct if alternative courses of action have been considered and rejected.   *Valle v. State*, 778 So.2d 960 (Fla. 2001).

In denying Petitioner's postconviction motion, the trial court clearly used the standards announced in *Strickland v. Washington*, 466 U.S. 668 (1984), in denying all claims of ineffective assistance of counsel. (App. S)   The record reflects that counsel's performance was not deficient or that Petitioner was prejudiced in any way. As noted by the trial court, Petitioner has failed to demonstrate prejudice. The outcome of the case would not have been different.

In claim four, Petitioner argues that defense counsel failed to subpoena and secure several witnesses who he claims would have refuted the State's evidence that he supplied guns to the robbers: co-defendant Gerald McMillan, Corey Walker, Patricia Johnson Walker, Raymond Boyd Johnson and Andre Robertson.   Although Petitioner states that they were *willing* to testify, he does not state if they were *available* to testify. The Florida Supreme Court has recently held that in addition to showing what testimony

17

counsel could have elicited and how his failure to call, interview or present the witness was prejudicial, the postconviction movant must also show that they were available to testify. *Nelson v. State*, No. SC02-1418 (**Fla.** June 3, 2004). In any regard, the record refutes Petitioner's allegation as to what Gerald McMillan would have testified to. His statement is contained in the record and it reveals that in fact Petitioner did supply the guns to both he and Floyd. (App. **A**, 49)

In claims five and six, Petitioner claims defense counsel failed to investigate and secure impeachment evidence and an alibi defense. According to the State's evidence adduced at trial, Petitioner was clearly the driver of the get-away car. So what if he was at the B.P. station down the street with his wife when the robberies were committed. That does not negate the State's evidence that he dropped off his co-defendants, gave them the guns to commit the robberies and instructed them in how to do it. Furthermore, there was evidence that a rifle found in Petitioner's house, together with the ones used in the robbery, matched the serial numbers of guns which where stolen in a prior burglary.

In claim seven, Petitioner alleges that defense counsel failed to object to the jury's request to listen to the tape of the 911 call during deliberations. He maintains that counsel should have objected because there was an unidentified speaker on the tape. The record on appeal indicates two audiotapes were admitted into

evidence. (App. A, 80) **The** transcript **only** indicates that the jury wanted a tape-recorder. (App. A-1, 492) **It** does not necessarily indicate which **tape they wanted** to **listen to.** Because the 911 tape was already admitted **into** evidence, **there was** no reason to object to the jury listening to the tape during **deliberations.**

Petitioner has **failed** to **demonstrate** either deficient performance or prejudice. As Petitioner's claims are a mixed question of law and **fact,** the Court **must** ask whether the determination of **facts necessary** for the trial court to reach its conclusion was unreasonable under **section** 2254(d)(2). "To establish that habeas **relief** is warranted **on** the §2254(d)(2) ground that the state court's **decision** was **based** on an 'unreasonable determination of the **facts** in light of **the** evidence presented in the state court proceedings,' a petitioner **must** rebut by clear and convincing evidence the §2254(e)(1) **presum**ption that a state court's factual **findings are** correct." *Foster* v. *Johnson,* 293 F.3d 766, 776-77 (5th Cir. 2002)(citation **omitted**), *cert. denied,* 123 S.Ct. 625 (2002); *Torres* v. *Prunty,* 223 **F.3d** 1103, 1108 (9th Cir. 2000)(stating that **in order** for a **federal** district court to conclude that a **state** court's **factual** determination was unreasonable under §2254(d)(2), the **federal** court must be "left with a 'firm conviction' that the deter**minati**on made by the state court was wrong **and that** the one [**the pe**titioner] urges was correct") *see also* 28 U.S.C. §2254(e)(1).

In the instant **case**, nothing in the **rec**ord suggests that the court's factual **findings** were unreasonable.   Further, Petitioner **has** failed to rebut **the presumption** of **corre**ctness accorded the court's factual **findings**.   Because he **has not** denigrated the trial court's factual **findings, the** instant **petition** should be dismissed and/or denied in all **respects**.

Petitioner is **entitled** to no relief **and** the petition should be dismissed and/or denied **in** all respects.

### CONCLUSION

WHEREFORE, based **upon** the above **argume**nts and authorities, Respondents respectfully request this **court** to grant summary judgment and dismiss **the** petition for **writ** of habeas corpus with prejudice and/or to **deny the** petition in **all** respects.

**Respe**ctfully submitted,

**CHARLES** J. CRIST, JR.
**ATTORNEY** GENERAL


**ROBIN** A. COMPTON
**ASSISTANT** ATTORNEY GENERAL
**Fla.** Bar #846864
**444** Seabreeze Boulevard
**Fifth** Floor
**Daytona** Beach, FL   32118
**(386)** 238-4990
**(386)** 238-4997-FAX

**COUNSEL** FOR RESPONDENTS

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing Response To Petition and index to appendix has been furnished by U.S. Mail to Jerome Burgess, DOC# 990922, Florida State Prison, 7819 N.W. 228th Street, Raiford, FL, 32026, this _4th_ day of June, 2004.

Robin A. Compton
**Assi**stant Attorney General

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


JEROME BURGESS,
A/K/A SHAM' LA GOD ALLAH,

     Petitioner,


v.                       CASE NO. 3:04-CV-149-J-99HTS


JAMES V. CROSBY, JR., et al.,

     Respondents.
_____/


APPENDIX


CHARLES J. CRIST, JR.
ATTORNEY GENERAL

ROBIN A. COMPTON
ASSISTANT ATTORNEY GENERAL
Fla. Bar #0846864
444 Seabreeze Blvd.
5th Floor
Daytona Beach, FL 32118
(386) 238-4990
FAX (386)238-4997

COUNSEL FOR RESPONDENTS

## INDEX TO APPENDIX

RECORD ON DIRECT APPEAL . . . . . . . . . . . . . . . . . . . A

TRIAL TRANSCRIPT . . . . . . . . . . . . . . . . . . . . . . A-1

INITIAL BRIEF . . . . . . . . . . . . . . . . . . . . . . . . B

ANSWER BRIEF . . . . . . . . . . . . . . . . . . . . . . . . C

FIFTH DCA DECISION . . . . . . . . . . . . . . . . . . . . . D

FIFTH DCA MANDATE . . . . . . . . . . . . . . . . . . . . . . E

MOTION TO CORRECT ILLEGAL SENTENCE . . . . . . . . . . . . . F

TRIAL COURT ORDER DENYING MOTION TO CORRECT . . . . . . . . . G

NOTICE OF APPEAL . . . . . . . . . . . . . . . . . . . . . . H

RECORD ON APPEAL FROM 3.800[1] . . . . . . . . . . . . . . . I

FIFTH DCA ORDER TO RESPOND . . . . . . . . . . . . . . . . . J

STATE'S RESPONSE . . . . . . . . . . . . . . . . . . . . . . K

FIFTH DCA ORDER . . . . . . . . . . . . . . . . . . . . . . . L

FIFTH DCA ORDER . . . . . . . . . . . . . . . . . . . . . . . M

FIFTH DCA DECISION . . . . . . . . . . . . . . . . . . . . . N

FIFTH DCA ORDER . . . . . . . . . . . . . . . . . . . . . . . O

FIFTH DCA MANDATE . . . . . . . . . . . . . . . . . . . . . . P

MOTION FOR POSTCONVICTION RELIEF . . . . . . . . . . . . . . Q

MEMORANDUM OF LAW . . . . . . . . . . . . . . . . . . . . . . R

TRIAL COURT ORDER DENYING POSTCONVICTION RELIEF . . . . . . . S

NOTICE OF APPEAL . . . . . . . . . . . . . . . . . . . . . . T

FIFTH DCA DECISION . . . . . . . . . . . . . . . . . . . . . U

_____

[1]Appendix I begins on page 238.  Pages 1-237 can be found in Appendix A and A-1 which is the record from direct appeal.

FIFTH DCA ORDER . . . . . . . . . . . . . . . . . . . . . . . V

FIFTH DCA MANDATE . . . . . . . . . . . . . . . . . . . . . . W

SECOND MOTION FOR POSTCONVICTION RELIEF . . . . . . . . . . . X

TRIAL COURT ORDER DENYING POSTCONVICTION MOTION . . . . . . . Y

NOTICE OF APPEAL . . . . . . . . . . . . . . . . . . . . . . Z

FIFTH DCA DECISION . . . . . . . . . . . . . . . . . . . . . AA

FIFTH DCA MANDATE . . . . . . . . . . . . . . . . . . . . . BB

FSC ACKNOWLEDGMENT OF NEW CASE . . . . . . . . . . . . . . . CC

FSC ORDER DISMISSING CASE . . . . . . . . . . . . . . . . . DD