UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


JEROME BURGESS,
a/k/a SHAM'LA GOD ALLAH,

                    Petitioner,

vs.                                    Case No. 3:04-cv-149-J-32HTS

JAMES R. MCDONOUGH,[1] et al.,

                    Respondents.

_____


**ORDER**[2]

**I. Status**

Petitioner Jerome Burgess filed a Petition for Writ of Habeas

Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on March 1, 2004.[3]

An Amended Petition (Doc. #7) was filed on March 29, 2004.  The

Respondents filed a Response to Petition (Doc. #10) (hereinafter

_____

        [1] James R. McDonough, the Interim Secretary of the Florida
Department of Corrections, is substituted as the proper party
Respondent for James V. Crosby, Jr., pursuant to Rule 25(d)(1) of
the Federal Rules of Civil Procedure.

        [2] Under the E-Government Act of 2002, this is a written
opinion and therefore is available electronically.  However, it has
been entered only to decide the motion or matter addressed herein
and is not intended for official publication or to serve as
precedent.

        [3] The Petition was timely filed.

Response) and an Appendix (Doc. #11) on June 7, 2004.  A reply (Doc. #17) (hereinafter Reply) and an Appendix (Doc. #18) were filed on July 30, 2004.  Petitioner sought and was granted leave to file an amended petition.  He is proceeding on a Second Amended Petition (Doc. #34) (hereinafter Second Amended Petition) filed on September 6, 2005.  Also filed on that date were a Memorandum of Law (Doc. #35) and an Appendix (Doc. #36).

The only new ground raised in the Second Amended Petition is new ground eight.  Respondents notified the Court that they would rely upon their response to the merits of new ground eight contained within the Supplemental Response to Leave to Amend (Doc. #30), filed June 28, 2005, at 4-8.  Petitioner notified the court that, with regard to new ground eight, he would rely on his Response to Respondents' Supplement Response (Doc. #31) (hereinafter Supplemental Reply).  Finally, Petitioner filed an Amended Memorandum of Law (Doc. #40) on March 10, 2006.

In sum, Petitioner is proceeding on the Second Amended Petition, and the Respondents' are relying on their original Response (Doc. #10) with respect to all grounds, except new ground eight.  With respect to new ground eight, the response is contained in their Supplemental Response to Leave to Amend (Doc. #30).  Petitioner relies on his Reply (Doc. #17) for all grounds but new ground eight and his Supplemental Reply (Doc. #31) for new ground eight.

- 2 -

The Court also required Respondents to file a supplemental response addressing Ground Nine of the Second Amended Petition (Doc. #34 at 19-20).  The Court's concern was that the state conceded error on direct appeal and in response to the Rule 3.800 motion with regard to the sentencing error claim raised in Ground Nine.  Respondents filed a Supplemental Response Addressing Ground Nine/Motion to Dismiss Due to Pending State Court Proceedings (Doc. #47), filed December 11, 2006.  Petitioner replied on January 3, 2007.  (Doc. #49).  The Court has determined that this ground deserves more attention and the Court will appoint counsel to represent Petitioner to pursue Ground Nine only.

Petitioner is challenging a 2001 St. Johns County conviction for robbery with a weapon, to wit:  a firearm.  Seven grounds of ineffective assistance of counsel are raised in the Petition based upon counsel's failure: (1) to file a motion to dismiss a defective information; (2) to move for a judgment of acquittal on the state's failure to prove the crime charged; (3) to object to jury instructions, which placed two separate and distinct enhancement penalties in the same charge; (4) to secure subpoenaed defense witnesses; (5) to investigate and secure potential contradicting evidence; (6) to investigate and secure impeachment evidence; and, (7) to object to the jury's request to listen to the 911 tape, where the tape included an unidentified speaker.  New ground eight states that the prosecution withheld favorable evidence and allowed

a state's witness to perjure himself.[4]  Ground nine contends the trial court erred when it sentenced Petitioner to life, when the statutory maximum only carried a maximum sentence of thirty years for the crime charged.

## II. Procedural History

Petitioner was charged by information with principal to robbery with a weapon, to wit:  a firearm.  Ex. A at 1-2.[5]  He was tried before a jury, and the jury found him guilty as charged.  Ex. A-1 at 493.  He was adjudicated guilty, Ex. A at 230, and sentenced to life as a prison releasee reoffender.  Id.

A direct appeal was taken raising two grounds:  (1) the trial court erred in sentencing the defendant to life for robbery with a firearm as a prison releasee reoffender where the defendant was convicted by jury verdict of robbery with a weapon, relying on Apprendi, and (2) the trial court erred in allowing irrelevant other crime evidence during rebuttal where the evidence was not admissible.  Ex. B at i.  The state responded.  Ex. C.  The judgment and sentence were affirmed per curiam on August 27, 2002,

---

[4] Ground Eight in the Amended Petition asserted the ineffective assistance of counsel for failure to properly object to the trial court's illegal enhancement of Petitioner's sentence, an Apprendi v. New Jersey, 530 U.S. 466 (2000) violation.  That ground was altered in the Second Amended Petition and labeled ground nine.

[5] The Court hereinafter refers to Respondents' Exhibits (Doc. #11), filed June 7, 2004, as "Ex."

by the Fifth District Court of Appeal.  Ex. D.  The mandate issued on September 13, 2002.  Ex. E.

Petitioner filed a Rule 3.800 Motion to Correct Illegal Sentence claiming he was illegally sentenced to life imprisonment as a prison releasee reoffender.  Ex. F.  The motion was denied.  Ex. G.  Petitioner appealed.  Ex. H.  The Fifth District Court of Appeal asked for a response from the state.  Ex. J.  The state responded Ex. K.  The appellate court then requested the record on appeal, which was provided.  Ex. L; Ex. I.  The Fifth District Court of Appeal asked that the record be supplemented with the charging document/information.  Ex. M.  On January 6, 2004, the Fifth District Court of Appeal affirmed per curiam.  Rehearing was denied.  Ex. O.  The mandate issued on March 8, 2004.  Ex. P.

Petitioner filed a Rule 3.850 Motion for Post-Conviction Relief on August 25, 2003.  Ex. Q.  He raised eight claims:  (1) the ineffective assistance of counsel for failure to file a motion to dismiss a duplicitous information which charged both a weapon and a firearm; (2) ineffective assistance of counsel for failure to file a motion for judgment of acquittal; (3) the ineffective assistance of counsel for failure to object to a jury instruction; (4) the ineffective assistance of counsel for failure to have a key defense witnesses subpoenaed; (5) the ineffective assistance of counsel for failure to investigate and secure impeachment evidence; (6) the ineffective assistance of counsel for failure to impeach a

state witness on a material issue; (7) the ineffective assistance of counsel for failure to object to the jury's request to listen to the 911 tape; and, (8) the state improperly withheld favorable evidence and allowed a witness to commit perjury. Id. The circuit court denied the post-conviction motion. Ex. S. An appeal was taken, Ex. T, and the Fifth District Court of Appeal affirmed per curiam on February 3, 2004. Ex. U. Rehearing was denied on March 12, 2004. Ex. V. The mandate issued on March 31, 2004. Ex. W. A petition for discretionary review was dismissed on March 31, 2004. Ex. CC; Ex. DD.

Petitioner filed a second motion for post conviction relief on January 27, 2004. Ex. X. He raised three grounds: (1) the ineffective assistance of counsel for failure to argue an Apprendi violation at sentencing; (2) trial court error in instructing the jury; and, (3) the ineffective assistance for failure to call the co-defendant as a witness. Id. On February 3, 2004, the trial court denied the motion finding it to be procedurally barred and finding the grounds raised were identical to the grounds previously raised in the original post-conviction motion but restated to make them appear to be different. Ex. Y. Petitioner appealed, Ex. Z, and the district court per curiam affirmed on March 23, 2004. Ex. AA. The mandate issued on April 12, 2004. Ex. BB.

### III.  Evidentiary Hearing

A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief.  Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)).  Here, the pertinent facts of the case are fully developed in the record before the Court.  Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel").  No evidentiary proceedings are required in this Court.  See High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001).  The Court can "adequately assess [Petitioner's] claim[s] without further factual development."  Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

### IV.  Standard of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).  Since this action was

filed after the effective date of AEDPA, the Court will analyze

Petitioner's claim under 28 U.S.C. § 2254(d), as amended by AEDPA.

Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert.

denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215

n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox

v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998),

cert. denied, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review

under AEDPA and has explained:

> The Anti-Terrorism and Effective Death
> Penalty Act of 1996 (AEDPA) governs this
> [action] and limits our review of the
> decisions of the state courts:
>
> > A federal court may not grant a
> > petition for a writ of habeas corpus
> > to a state prisoner on any claim
> > that has been adjudicated on the
> > merits in state court unless the
> > adjudication (1) resulted in a
> > decision that was contrary to, or
> > involved an unreasonable application
> > of clearly established federal law,
> > or (2) resulted in a decision that
> > was based on an unreasonable
> > determination of the facts in light
> > of the evidence presented in state
> > court.
>
> Clark v. Crosby, 335 F.3d 1303, 1307-08 (11th
> Cir. 2003) (citations omitted). A general
> framework of substantial deference governs our
> review of every issue that the state courts
> have decided:
>
> > [A] state-court decision can be
> > "contrary to" this Court's clearly
> > established precedent in two ways.
> > First, a state-court decision is

contrary to this Court's precedent
if the state court arrives at a
conclusion opposite to that reached
by this Court on a question of law.
Second, a state-court decision
is also contrary to this Court's
precedent if the state court
confronts facts that are materially
indistinguishable from a relevant
Supreme Court precedent and arrives
at a result opposite to ours.

. . . .

[A] state-court decision can
involve an "unreasonable
application" of this Court's clearly
established precedent in two ways.
First, a state-court decision
involves an unreasonable application
of this Court's precedent if the
state court identifies the correct
governing legal rule from this
Court's cases but unreasonably
applies it to the facts of the
particular state prisoner's case.
Second, a state court decision also
involves an unreasonable application
of this Court's precedent if the
state court either unreasonably
extends a legal principle from our
precedent to a new context where it
should not apply or unreasonably
refuses to extend that principle to
a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 405-07, 120
S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000).

Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th

Cir. 2005), cert. denied, 126 S.Ct. 803 (2005).

The Eleventh Circuit addressed the application of the

"contrary to" clause in reviewing a state court adjudication:

- 9 -

> In applying the "contrary to" prong of AEDPA, we have recognized that where no Supreme Court precedent is on point, "we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court." McIntyre v. Williams, 216 F.3d 1254, 1258 (11th Cir. 2000).

Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir.), cert. denied, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See id. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S.

906 (2003).  See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 125 S.Ct. 2963 (2005).  Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

### V.  Ineffective Assistance of Counsel

Petitioner has raised claims of ineffective assistance of counsel.  As noted previously, the standard of review to be applied is that found in AEDPA.  As explained by the Supreme Court of the United States:

> Under 28 U.S.C. § 2254, [Petitioner's] entitlement to federal habeas relief turns on showing that the state court's resolution of his claim of ineffective assistance of counsel under Strickland v. Washington, supra, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1).  An "unreasonable application" occurs when a state court "'identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, supra, at 520, 123 S.Ct. 2527 (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of O'CONNOR, J.)).  That is, "the state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable." Wiggins v. Smith, supra, at 520-521, 123 S.Ct. 2527 (quoting Williams v. Taylor, supra, at 409, 120 S.Ct. 1495 (internal quotation marks omitted)).
>
> Ineffective assistance under Strickland is deficient performance by counsel resulting in prejudice, 466 U.S., at 687, 104 S.Ct. 2052, with performance being measured against an "objective standard of reasonableness,"

- 11 -

id., at 688, 104 S.Ct. 2052, "under prevailing
professional norms." Ibid.; Wiggins v. Smith,
supra, at 521, 123 S.Ct. 2527.

Rompilla v. Beard, 125 S.Ct. 2456, 2462 (2005).

The United States Supreme Court has "declined to articulate
specific guidelines for appropriate attorney conduct and instead
[has] emphasized that '[t]he proper measure of attorney performance
remains simply reasonableness under prevailing professional
norms.'" Wiggins v. Smith, 539 U.S. 510, 521 (2003) (quoting
Strickland v. Washington, 466 U.S. 668, 688 (1984)).

The Eleventh Circuit has expounded upon the deference due to
counsel's performance as well as to the state court's decision
concerning that performance:

> In assessing [Petitioner's] claim that
> his trial counsel were ineffective we must
> keep in mind that "[j]udicial scrutiny of
> counsel's performance must be highly
> deferential." Id. at 689, 104 S.Ct. at 2065.
> In addition to the deference to counsel's
> performance mandated by Strickland, the AEDPA
> adds another layer of deference--this one to a
> state court's decision--when we are
> considering whether to grant federal habeas
> relief from a state court's decision.
> Woodford, 537 U.S. at 24, 123 S.Ct. at 360
> (section 2254(d)(1) imposes a "highly
> deferential standard for evaluating
> state-court rulings") (internal marks and
> citation omitted). [Petitioner] must do more
> than satisfy the Strickland standard. He must
> also show that in rejecting his ineffective
> assistance of counsel claim the state court
> "applied Strickland to the facts of his case
> in an objectively unreasonable manner." Bell
> v. Cone, 535 U.S. 685, 699, 122 S.Ct. 1843,
> 1852, 152 L.Ed.2d 914 (2002).

Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004), cert. denied, 544 U.S. 982 (2005).

### VI.  Grounds One - Eight

Petitioner has adequately exhausted his ineffective assistance of counsel claims.  As noted by Respondents, the first three grounds are interrelated.  Petitioner complains that the information charged him with being a principal to robbery with a weapon, a first degree felony with a maximum punishment of thirty years, but he was sentenced and punished to life in prison for robbery with a firearm.  He complains that counsel should have moved to dismiss the information, should have moved for a judgment of acquittal and should have objected to the jury instructions. Petitioner contends that the state failed to prove that a weapon was carried instead of firearms and that the state failed to prove that a firearm met the statutory definition of a weapon.

This Court will give the deference which is due the state court ruling.  With respect to Petitioner's claims of ineffective assistance of counsel, the trial court found:

> In his motion for post-conviction relief, the Defendant offers 8 claims of ineffective assistance of counsel.  According to the United States Supreme Court, to establish a claim of ineffective assistance of counsel, the defendant must show:  (1) that the counsel['s] performance was below the expectation of a competent counsel; and (2) that but for the counsel's incompetence, the outcome of the proceedings would have been different.  See Strickland v. Washington, 466 U.S. 668, 687-88, 694; Cherry v. State, 659

So.2d 1069, 1072 (Fla. 1985); <u>Waterhouse v.
State</u>, 792 So.2d 1176, 1182 (Fla. 2001)[.]

The first three claims deals [sic] with
the same issue.  The Defendant claims that the
counsel allowed [a] defective information,
which resulted to [sic] duplicate charges
against him.  According to the Defendant, but
for the counsel['s] failure to object to the
defective information and jury instructions,
the Defendant would have [been] liable for
only a second degree felony for the armed
robbery.  This claim is without merit because
the Defendant was charged under Section
777.011 and Section 812.13(2)(B) of the
Florida Statutes.  According to the
transcript, the Defendant was charged with
armed robbery with a weapon and the
instruction given to the jury was based on
the same charges.  According to the facts,
although the Defendant did not go into the
motel with the other two individuals to rob
the attendant, he provided the guns and drove
the get away car.  Under section 777.011, his
part in the crime makes him a Principal in the
first degree and not second degree.
Therefore, the Defendant was tried for the
correct charge and sentenced correctly, and
the jury was instructed correctly on the right
charges.

Ex. S at 1-2.

First it is clear that, in this case, the state court

adjudicated Petitioner's claims of ineffective assistance of

counsel on the merits, and thus, there is a qualifying state court

decision.  <u>See</u> <u>Wright</u>, 278 F.3d at 1255-56.  Having found that the

state court determination was a qualifying decision, the Court must

next consider the "contrary to" and "unreasonable application"

components of the statute.  "It is the objective reasonableness,

not the correctness <u>per</u> <u>se</u>, of the state court decision that we are

to decide." <u>Brown v. Head</u>, 272 F.3d 1308, 1313 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 537 U.S. 978 (2002).

Upon review, the state court's decision did not contradict governing law.   In addition, there is no Supreme Court case favorable to Petitioner that is materially indistinguishable from the facts of this case.

The second inquiry, whether the state court's application of clearly established federal law was objectively reasonable, is also addressed.   Upon review of the record before the Court, the state court's application of the clearly established law regarding the effectiveness of trial counsel was objectively reasonable.   The state court reasonably applied the ineffectiveness standard to the facts of Petitioner's case.

The ruling of the state trial court in denying the above-mentioned claims of ineffective assistance of counsel raised in the Rule 3.850 Motion resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.   28 U.S.C. § 2254(d). Accordingly, Petitioner is not entitled to relief on his claim of ineffective assistance of counsel raised in grounds one, two and three because the state court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Next, with regard to the remaining claims of ineffective assistance of counsel, the circuit court, in denying the Rule 3.850 motion, stated:

> On the remaining claims, the Defendant states that the counsel failed to call certain witnesses, investigate certain evidence and failed to stop the state from offering a witness that committed perjury. The Defendant claims that but for the actions of the defense counsel he would have been acquitted. According to the 1st DCA, a Defendant's general allegations or mere allegations and conclusions in a post conviction motion are insufficient to demonstrate entitlement to relief. Flint v. State, 561 So.2d 1343, 1344 (Fla. 1st DCA 1990). The Florida Supreme Court also held that the decision of a counsel not to argue or explore certain witness[es] or evidence can be an effective counseling as far as the action of the defense counsel is not prejudicial. Francois v. Wainwright, 470 So.2d 685 (Fla. 1985). Finally, the Florida Supreme Court also in Manuel held that a defendant is required by the court to show that the defense counsel was deficient and secondly that the deficiency of the defense counsel prejudice[d] the Defendant, which means that the result of the trial would have been different but for the deficiency of the counsel. Manuel Valle v. State of Florida, 778 So.2d 960 (Fla. 2001); Ricardo Thompson v. State of Florida, 838 So.2d 670 (Fla. 5th DCA 2003); Thomas Holmes v. State of Florida, 760 So.2d 1198 (Fla. 5th DCA 2001).
>
> The transcripts shows [sic] that the defense counsel called Charles Lee Floyd and tried to impeach him with his prior testimony that the guns was [sic] supplied by Mr. Alexander, the other codefendant and not Mr. Burgess. The defense counsel also called

- 16 -

Anthony William Hurlbert, who testified that
Mr. Floyd told him that he (Floyd) told the
police that Burgess supplied the guns, out of
fear.  The transcript further shows that the
counsel made [an] effort to preserve rulings
of the court for appeal and called the
witnesses that he felt were necessary for the
representation of the Defendant.

The relief that the Defendant seeks is
meritless because the outcome of the case
would not have been different.  According to
[the] transcript, it is clear that the
Defendant was the driver of the getaway car.
Furthermore, there was evidence that a rifle
found in the Defendant's house, together with
the ones used in the robbery, matched the
serial numbers of guns that was [sic] stolen
in a prior burglary.  The defense counsel['s]
representation of the Defendant was not
prejudicial.

Ex. S at 2.

The decision of the trial court in denying grounds four, five,

six, seven and eight[6] resulted in a decision that involved a

reasonable application of clearly established federal law, as

determined by the United States Supreme Court.  28 U.S.C. §

2254(d).  Therefore, Petitioner is not entitled to relief on

grounds four, five, six, seven and eight because the state court's

decision was not contrary to clearly established federal law, did

not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of

_____

[6] Ground eight of the Rule 3.850 motion raises the same claim
as raised in new ground eight of the Second Amended Petition.

the facts in light of the evidence presented in the state court proceedings.

In the alternative, Petitioner has failed to show that there was any prejudice caused by counsel's performance. The evidence of guilt was substantial, if not overwhelming. Therefore, the asserted deficiencies of counsel did not constitute prejudice under Strickland.

To the extent that ground eight was raised in the state system as a Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) violation claiming the state withheld favorable evidence and knowingly presented perjured testimony, the Court still gives deference to the trial court's ruling because the outcome of the case would not have been different. The only alleged false evidence is the statement by Officer Leirvik at trial that the black leather organizer was not seized as evidence but was given to Petitioner in his personal property at the jail. Ex. A-1 at 289-90. Petitioner has submitted documentation showing that the black leather organizer was turned over to Investigator Jerry Betz on January 26, 2001, by the St. Augustine Police Department. See Appendix (Doc. #36 at 27-28).

In determining whether the government denied Petitioner substantive due process, this Court must apply the well-established Brady rule.

> In Brady [v. Maryland, 373 U.S. 83 (1963)],
> the Supreme Court held that "the suppression

by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." _Id_. at 87, 83 S.Ct. at 1196-97. By the time of [defendant's] second trial, the Supreme Court had explained the operation of the _Brady_ rule in its decision in _United States v. Bagley_, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In _Bagley_, the Court explained that pursuant to _Brady_, "the prosecution is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." _Id_. at 675, 105 S.Ct. at 3380 (footnote omitted). This means that there is no violation unless the suppressed material "is of sufficient significance to result in the denial of the defendant's right to a fair trial." _Id_. at 675-76, 105 S.Ct. at 3380 (quoting _United States v. Agurs_, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976)). The _Bagley_ Court recognized that "evidence favorable to an accused," _Brady_, 373 U.S. at 87, 83 S.Ct. at 1196, is not limited to evidence that proves the defendant did not commit the crime. _Bagley_, 473 U.S. at 676, 105 S.Ct. at 3380. Instead, "[i]mpeachment evidence . . . as well as exculpatory evidence, falls within the _Brady_ rule" because, "if disclosed and used effectively, it may make the difference between conviction and acquittal." _Id_. In _Bagley_, the Supreme Court recognized that "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial," and then proceeded "to determine the standard of materiality applicable" to undisclosed _Brady_ material. _Id_. at 678, 105 S.Ct. at 3381. After discussing its former cases which applied different materiality standards depending on the specificity of the defendants' requests for disclosure, the Court determined that one, flexible standard, borrowed from _Strickland_,

- 19 -

> should be employed in all contexts. Id. at
> 378-82, 105 S.Ct. at 3381-83. **That is: The
> evidence is material only if there is a
> reasonable probability that, had the evidence
> been disclosed to the defense, the result of
> the proceeding would have been different. A
> "reasonable probability" is a probability
> sufficient to undermine confidence in the
> outcome.** Id. at 682, 105 S.Ct. at 3383.

Crawford v. Head, 311 F.3d 1288, 1324-25 (11th Cir. 2002) (emphasis
added), cert. denied, 540 U.S. 956 (2003); Strickler v. Greene, 527
U.S. 263, 280 (1999) (stating that the duty to disclose such
evidence is applicable even though there has been no request by the
accused and the duty encompasses impeachment evidence as well as
exculpatory evidence); Kyles v. Whitley, 514 U.S. 419, 437 (1995)
(noting the individual prosecutor has a duty to learn of any
favorable evidence known to the others acting on the government's
behalf in the case, including the police).

In order to prevail on a Giglio claim (a type of Brady
violation that occurs when undisclosed evidence demonstrates that
the prosecution's case included perjured testimony and that the
prosecution knew, or should have know, of the perjury), a habeas
petitioner must establish that the prosecutor knowingly used
perjured testimony, or failed to correct what he subsequently
learned was false testimony, and that the falsehood was material.
Majaraj v. Sec'y for the Dep't of Corr., 432 F.3d 1292, 1312 (11th
Cir. 2005), petition for cert. filed, 74 U.S.L.W. 3687 (U.S. Apr.
25, 2006) (No. 05-1555). A statement under Giglio is material if

there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.  Id. at 1314.

This Court is not convinced that the result of the proceeding would have been different if the organizer had been provided to Petitioner.  The organizer contained evidence that was highly prejudicial to the defense.  It contained a credit card, stolen at gun point, from a worker at a Comfort Inn.  The organizer also held Petitioner's birth certificate, pay stubs and a Walmart receipt.  The items purchased on the Walmart receipt were purchased with the stolen credit card.  (Doc. #36 at 27-28).

Further, the Court does not find that the statement of the officer that the planner had been turned over to Petitioner was material.  There is no reasonable likelihood that this testimony could have affected the judgment of the jury.  Petitioner wanted the organizer because he asserted it contained receipts for check cashing at check cashing institutions.  The documents he has submitted to the Court do not show that the organizer contained check cashing receipts.[7]  Further, if Petitioner had presented some evidence from the organizer, the state may have been allowed to introduce the highly prejudicial evidence of the stolen credit card and the fraudulent use of the stolen credit card contained within the organizer.  These would have been incredibly damaging to the

---

[7] The Court recognizes that some miscellaneous receipts are mentioned.

defense, as Petitioner was facing a very similar charge of robbery with a weapon (a firearm) of a hotel.

As previously stated, for <u>Brady</u> purposes, the evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The marginal improvement for the defense in being able to assert that Petitioner had cashed some checks prior to the robbery would not have changed the outcome of the proceeding. As noted by the state, the victim testified that only $131.00 was taken in the robbery. Ex. A-1 at 61. He further testified that most of the money was in one dollar bill denominations, with some five, ten and twenty dollar bills. <u>Id</u>. at 61-62. These small denominations were found on Petitioner and his co-defendant testified that the proceeds from the robbery were turned over to Petitioner immediately after the robbery. <u>Id</u>. at 204.

Finally, Petitioner asserts that he cashed two checks, one for $278.00 and one for $100.00. He claims he spent $100.00 on a radio, leaving him with only $278.00, explaining the $278.00 found in his left rear pocket when he was arrested. <u>Id</u>. at 158. His wife testified at trial that they had the radio installed on the day of the robbery. <u>Id</u>. at 298. She also testified that later that evening Petitioner gave her money to shop at Walmart to purchase items to replace items lost in a fire at his parents'

house.  Id. at 303, 307.  Petitioner was arrested with $278.00
dollars on his person, so that his allegation that he only had
$278.00 left after he spent $100.00 on the radio does not allow for
the money given to his wife after the radio was installed.[8]

The officer's statement that the organizer was turned over to
Petitioner at the jail was not material because there is no
reasonable likelihood that this testimony, even if shown to be
false or mistaken, could have affected the judgment of the jury.
Petitioner obviously had more money than  what he claimed he
received from cashing the two checks.  Of course, the testimony of
his co-defendant was highly damaging, as he clearly stated the
proceeds of the robbery were turned over to Petitioner.  The state
and defense stipulated that the property receipts of the co-
defendants Mr. McMillan and Mr. Floyd showed that they were booked
with cash of $40.00 and $64.00, respectively.  Id. at 319-20.
Petitioner is not entitled to relief on ground eight.

### VII.  Motion to Dismiss

Although Plaintiff filed a Rule 3.850 motion in the state
circuit court on June 8, 2005, the Respondents are now raising a
motion to dismiss based on this pending state court proceeding.
This matter should have been raised back on June 28, 2005, when
Respondents filed their Supplemental Response to Leave to Amend

---

[8] Apparently Petitioner had more money with him after he
purchased the radio as he also paid for his wife's nail salon visit
and a haircut for himself.  Id. at 299-300.

(Doc. #30), or on September 20, 2005, when Respondents filed their Notification/Response to New Ground Eight of Second Amended Petition.  The Court is not inclined to grant a motion to dismiss at this late stage of the proceeding.

Further, the Court is not inclined to dismiss the Second Amended Petition because the claims that are currently before the Fifth District Court of Appeal are not the same claims that are pending before this Court.  Petitioner presented two new claims in his June 8, 2005, Rule 3.850 motion, and the denial of the Rule 3.850 motion is presently on appeal in the state courts.

This Court recognizes that Petitioner has presented his claims in a piecemeal fashion in the past, and apparently he continues to do so.  But, he has chosen to file and proceed on his Second Amended Petition, and the Court will not delay any further in addressing the claims pending before this Court.[9]

Accordingly, it is now,

**ORDERED AND ADJUDGED:**

1.  Respondents' December 5, 2006, Motion for Enlargement of Time (Doc. #46) is **GRANTED**, and Respondents' Supplemental Response

---

[9] The Court was lenient with the pro se Petitioner and allowed him to file a Second Amended Petition, even after he had rushed to the federal court without awaiting rulings from the state court. The Respondents objected to the piecemeal litigation and the lateness of the amendment, but it was timely and the Court allowed the amendment in the interest of justice.  Order (Doc. #33).

Addressing Ground Nine/Motion to Dismiss Due to Pending State Court Proceedings (Doc. #47) is deemed to be timely filed.

2.   Respondents' December 11, 2006, Motion to Dismiss Due to Pending State Court Proceedings (Doc. #47) is **DENIED.**

3.   The Second Amended Petition (Doc. #34) is **DENIED with respect to grounds one through eight.** The Court reserves ruling on ground nine due to the need for further briefing on the issue.

4.   Petitioner is proceeding as a pauper, and the Court has determined that the appointment of a lawyer for him is appropriate. The Court hereby appoints Matthew R. Kachergus, Esquire, as counsel in this case, pursuant to the Criminal Justice Act.  Mr. Kachergus may obtain payment forms from the Clerk.

5.   Mr. Kachergus shall file a supplemental brief concerning ground nine of the Second Amended Petition (Doc. #34) within **FORTY-FIVE (45) DAYS** from the date of this order.  The Respondents shall file a supplemental brief addressing ground nine of the Second Amended Petition within **SEVENTY-FIVE (75) DAYS** from the date of this order.

**DONE AND ORDERED** in Jacksonville, Florida, this 29th day of January, 2007.


TIMOTHY J. CORRIGAN
United States District Judge

```
sa 1/26
c:
Jerome Burgess
a/k/a Sham'la God Allah
Ass't A.G. (Squire)
Matthew R. Kachergus, Esquire
```